UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT SCHLECTER & CATHY SCHLECTER,<br>Plaintiffs,<br><br>-against-<br><br>US BANK TRUST NA & SELECT PORTFOLIO SERVICING, INC.,<br>Defendants. | 26-CV-202 (JGLC)<br><br>**OPINION AND ORDER** |

JESSICA G. L. CLARKE, United States District Judge:

Plaintiffs Robert and Cathy Schlecter bring this action against their mortgage holder and servicer under the Real Estate Settlement Procedures Act ("RESPA") and the Truth in Lending Act ("TILA"). Present before the Court is Defendants US Bank Trust NA's and Select Portfolio Servicing, Inc.'s Motion to Dismiss Plaintiffs' Amended Complaint for failure to state a claim. Because the facts as alleged in the Amended Complaint, construed in a light most favorable to Plaintiffs, are sufficient to state a RESPA claim, this claim survives. Plaintiffs' TILA claim, however, does not. Plaintiffs failed to oppose dismissal of this claim, and therefore the Court dismisses it from this action.

## BACKGROUND

### I. Facts

The facts are taken from the Amended Complaint and assumed to be true for the purpose of this motion. ECF No. 17 ("Am. Compl."); *see ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 93 (2d Cir. 2007) (assuming facts from the complaints and supporting documents "to be true in reviewing a Fed. R. Civ. P. 12(b)(6) dismissal").

Plaintiffs Robert and Cathy Schlecter are the co-owners and residents of the property located at 95 Woodbrook Road, White Plains, New York ("the Property"). Am. Compl. ¶ 1. Plaintiffs have owned the Property for 21 years. *Id.* In 2005, Plaintiffs took out a mortgage of $400,000 with Washington Mutual Bank to purchase their home. *Id.* ¶ 8. In 2012, Plaintiffs refinanced their mortgage, extending it to forty years, to mature in 2054. *Id.* When refinancing, Plaintiffs also converted their mortgage "from an adjustable interest rate to a stepped fixed interest rate, starting at 2% for the first five years before increasing to 3% for the sixth year and then increasing again to 3.375% for the remaining loan term." *Id.*

In 2021, Plaintiffs fell behind in their mortgage payments "due to financial difficulties caused by the COVID-19 pandemic." *Id.* ¶ 10. Plaintiffs made multiple, unsuccessful efforts "to apply for loss mitigation," including a loan modification. *Id.* ¶ 11.

Defendant US Bank Trust NA ("US Bank") [1] has owned Plaintiffs' mortgage since April 23, 2024. *Id.* ¶ 2. Defendant Select Portfolio Servicing, Inc. ("SPS") is a mortgage servicer, and at the time of the assignment of Plaintiffs' mortgage and all times since, has operated as an agent of US Bank in servicing the mortgage. *Id.* ¶¶ 3–4. SPS is subject to a "Pooling and Servicing Agreement" with US Bank that "dictates how [SPS is] to service the loans held by US Bank." *Id.* ¶ 4.

In June 2024, after the assignment of Plaintiffs' mortgage to US Bank, Plaintiffs applied again for loss mitigation. *Id.* ¶ 12. And in July 2024, Plaintiffs were approved for a modification but, as the Court understands the allegations, the parties did not finalize the loan modification at

[1] Defendant US Bank refers to itself as "U.S. Bank Trust Company, National Association, as Trustee, as Successor in Interest to U.S. Bank National Association, as Indenture Trustee for the CIM Trust 2016 FRE1, Mortgage Backed Notes, Series 2016-FRE1." ECF No. 20 at 1.

that time. *Id*. ¶¶ 12, 16–17. Instead, Plaintiffs were given a one-month trial modification plan, which they completed. *Id.* ¶ 12.

On August 5, 2024, US Bank filed a foreclosure action against Plaintiffs' home, despite the allegedly ongoing loss mitigation application. *Id.* ¶ 15. Plaintiffs were served with the foreclosure complaint on August 22, 2024. *Id.* ¶ 16. Only "a few days" earlier, Plaintiffs received the terms of the proposed final loan modification. *Id.* The proposed terms were significantly worse than the modification they had previously signed. *Id.* ¶ 13. Although the interest rate remained the same, the mortgage term was shortened by five years, to mature in 2049,[2] which resulted in a higher monthly payment, increased by a $262.66 per month, and "a significantly increased balloon payment" of $101,050.70, which was $16,850.70 greater than the prior balloon payment. *Id.* ¶¶ 13, 18. Plaintiffs estimate that over the lifetime of the loan, this modification will cost them $116,697.74 more than the prior modification. *Id.* ¶ 14.

Despite their reservations about the proposed terms, Plaintiffs signed the loan modifications because "they felt that with the foreclosure having just been filed[,] they had no choice but to sign the loan modification in order to keep their home." *Id.* ¶ 17. Plaintiffs allege that if not for the initiation of the foreclosure action, "Plaintiffs would have attempted to negotiate . . . with Defendants for more affordable loan modification terms." *Id.* Specifically, Plaintiffs would have negotiated to "maintain[] an identical or later maturity date for this loan." *Id.* ¶ 19.

Furthermore, Plaintiffs' Property is part of the Homeowner's Association, Ridgeway at White Plains (the "HOA"). *Id.* ¶ 9. In the foreclosure action, the HOA was served as a co-

---

[2] Plaintiff also contrastingly alleged that the loan modification shortened the loan term by nine years. Am. Compl. ¶ 18.

defendant due to a potential lien on the Property. *Id.* ¶ 33. Thereafter, the HOA sent Plaintiffs a letter, informing them that the HOA retained legal counsel to review and potentially respond to the foreclosure complaint. *Id.* ¶ 34. The HOA's bylaws obligate Plaintiffs to repay the HOA for the cost of attorney's fees that the HOA incurs in defending its interest or liens on the Property. *Id.* ¶ 9. Therefore, in its letter, the HOA indicated that it would be charging Plaintiffs approximately $6,000 in attorney's fees. *Id.* ¶¶ 20, 34.

Finally, Plaintiffs allege that Defendants' actions, and the difficulties with paying the higher payments of the final loan modification, have caused Plaintiffs to suffer emotional damages. *Id.* ¶ 35. Specifically, Plaintiff Cathy Schlecter was diagnosed with anxiety, which caused her to lose "work resulting in a loss of income over $75,000." *Id.*

## II. Procedural History

On January 12, 2026, Plaintiffs initiated this case. ECF No. 1. On April 24, 2026, Defendant US Bank moved to dismiss Plaintiffs' Complaint. ECF No. 14. In response, Plaintiffs filed their Amended Complaint on May 14, 2026. Am. Compl. Plaintiffs bring two causes of action: (1) violation of RESPA, 12 U.S.C. § 2605, and its implementing regulations, known as Regulation X, 12 C.F.R. §§ 1024.1–1024.41, and (2) violation of TILA, 15 U.S.C. § 1639. *Id.* ¶¶ 24–43. Plaintiffs seek monetary damages and costs and fees. *Id.* at 7.

On June 5, 2026, both US Bank and SPS moved to dismiss the amended complaint in its entirety under Federal Rule of Civil Procedure 12(b)(6). ECF No. 20. Plaintiffs opposed the motion to dismiss on August 17, 2026. ECF No. 26 ("Opp."). Plaintiffs did not oppose dismissal of their TILA claim. *See id.* Defendants replied on August 28, 2026. ECF No. 27 ("Reply").

## LEGAL STANDARD

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must "constru[e] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (internal citation omitted). A claim will survive a Rule 12(b)(6) motion only if the plaintiff alleges facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that a defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. If a complaint does not state a plausible claim for relief, it must be dismissed. *Id.* at 679.

## DISCUSSION

Defendants move to dismiss Plaintiffs' Amended Complaint in its entirety. First, the Court determines that Plaintiffs have stated a dual tracking claim under RESPA. Then, the Court dismisses Plaintiffs' second cause of action—their TILA claim—for failure to oppose dismissal and as time-barred.

### I. Defendants' Motion to Dismiss Plaintiffs' RESPA Claim Is Denied

Plaintiffs allege that Defendants violated RESPA's prohibition on dual tracking. Am. Compl. ¶ 29. RESPA is "a consumer protection statute that was enacted by Congress to 'insure that consumers throughout the Nation are provided with greater and more timely information on

the nature and costs of the settlement process and are protected from unnecessarily high settlement charges[.]'" *Galli v. Astoria Bank*, No. 16-CV-3549 (SIL), 2017 WL 4325824, at *3 (E.D.N.Y. Sept. 27, 2017) (quoting 12 U.S.C. § 2601(a)). RESPA's implementing regulation, Regulation X, "contains provisions governing 'dual tracking' that prohibit a servicer from commencing a foreclosure proceeding or conducting a foreclosure sale if the borrower has submitted a 'complete loss mitigation application' within specified timeframes." *Almazon v. JPMorgan Chase Bank, Nat'l Ass'n*, No. 19-CV-4871 (VEC), 2020 WL 1151313, at *14 (S.D.N.Y. Mar. 9, 2020) (quoting 12 C.F.R. §§ 1024.41(f)–(g)). In other words, it is prohibited for "a [loan] servicer [to] move[] forward with foreclosure proceedings while simultaneously working with the borrower to avoid foreclosure." *Sylvester v. Interbay Funding LLC*, No. 15-CV-1736 (JPO), 2017 WL 4382056, at *4 (S.D.N.Y. Sept. 29, 2017).

Regarding dual tracking, Regulation X provides in pertinent part that:

> If a borrower submits a complete loss mitigation application . . . before a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process, a servicer shall not make the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process unless:
>
> (i) The servicer has sent the borrower a notice pursuant to paragraph (c)(1)(ii) of this section that the borrower is not eligible for any loss mitigation option and the appeal process in paragraph (h) of this section is not applicable, the borrower has not requested an appeal within the applicable time period for requesting an appeal, or the borrower's appeal has been denied;
>
> (ii) The borrower rejects all loss mitigation options offered by the servicer; or
>
> (iii) The borrower fails to perform under an agreement on a loss mitigation option.

12 C.F.R. § 1024.41(f)(2).

"Borrowers have a private cause of action to enforce the dual tracking provisions and to recover actual damages, costs, and attorneys' fees." *Almazon*, 2020 WL 1151313, at *14 (citing 12 U.S.C. § 2605(f); 12 C.F.R. § 1024.41(a); *Sylvester v. Bayview Loan Servicing LLC*, No. 15-CV-1736 (JPO), 2016 WL 3566234, at *2 (S.D.N.Y. June 24, 2016)). "To allege actual damages, Plaintiff must plead facts that link her injury to 'defendant's alleged RESPA violations—rather than the underlying failure to pay her mortgage and the potential foreclosure sale.'" *Id.* at *19 (quoting *Ehrenfeld v. Wells Fargo, N.A.*, No. 19-CV-2314 (BMC), 2019 WL 4933631, at *5 (E.D.N.Y. Oct. 7, 2019)).

Here, Plaintiffs have sufficiently alleged a dual tracking claim. First, Plaintiffs have alleged that they completed a loss mitigation application in June 2024, were approved the following month, and completed a one-month trial modification plan the month thereafter. Am. Compl. ¶ 12. However, prior to finalization of the terms of the loan modification, on August 5, 2024, Defendants filed a foreclosure case against Plaintiffs' home. *Id.* ¶ 15. Such initiation constitutes "ma[king] the first notice or filing required by applicable law for a[] judicial . . . foreclosure process." 12 C.F.R. § 1024.41(f)(2). *See also* Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X), 78 Fed. Reg. 10696, 10833 (Feb. 14, 2013) ("[T]he first notice or filing required by applicable law refers to any document required to be filed with a court . . . or provided to a borrower as a requirement for proceeding with a judicial or non-judicial foreclosure process. Such filings include, for example, a foreclosure complaint[.]"). Plaintiffs allege that they were served with the foreclosure complaint on August 22, 2024, which was only a few days after they had received the final loan modification offer. Am. Compl. ¶ 16.

Furthermore, none of the enumerated exceptions within Section 1024.41(f)(2) apply: Defendants had not informed Plaintiffs that they were not eligible for loss mitigation, and Plaintiffs had neither rejected any offer of loss mitigation nor failed to perform under a loss mitigation agreement. *See* 12 C.F.R. § 1024.41(f)(2).

Defendants argue, with reference to extra-pleading documents, that because Plaintiffs' loan modification application was "approved" in July 2024, *see* Am. Compl. ¶ 12, Plaintiffs no longer had a loan modification application pending when Defendants initiated the foreclosure action. *See* MTD at 6 (citing Am. Compl. ¶¶ 12, 15). Additionally, Defendants attempt to characterize the final loan modification offer as unrelated to Plaintiffs' loan modification application. *See* MTD at 7–9; Reply at 4–5. At this stage, these arguments fail.

First, even if Plaintiffs' application was approved prior to the initiation of the foreclosure action, Plaintiffs alleged that the terms of the loan modification agreement were not finalized until *after* initiation of the foreclosure action. *See* Am. Compl. ¶¶ 12, 16; *see also* ECF No. 20-13 (SPS's permanent loan modification offer, dated September 10, 2024, subsequent to the August 5, 2024 initiation of the foreclosure action). Although there does not appear to be caselaw on these specific facts, it appears clear that initiation of a foreclosure action prior to finalization of the loan modification agreement violates RESPA's prohibition on dual tracking. *See Sylvester*, 2017 WL 4382056, at *4 (defining dual tracking as "mov[ing] forward with foreclosure proceedings while simultaneously working with the borrower to avoid foreclosure"). And it appears that the very purpose of prohibiting dual tracking is to prohibit mortgagors from using a pending foreclosure action to extract more favorable loan modification terms—precisely what Plaintiffs allege here. *See* Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X), 78 Fed. Reg. at 10819 (explaining that the dual tracking

regulations are intended to mitigate "burden[s to] already struggling borrowers," and that initiation of foreclosure actions "may impact the evaluation and ultimate outcome for a borrower for a loss mitigation option"); *Weisheit v. Rosenberg & Assocs., LLC*, No. 17-CV-823 (JKB), 2017 WL 5478355, at *3 (D. Md. Nov. 15, 2017) ("RESPA has been read remedially in favor of greater coverage to further its goals of providing more information for consumers and preventing abusive practices by servicers.") (collecting cases).

Furthermore, the Court cannot resolve, at this stage of the case, Defendants' factual argument that the final loan modification agreement did not arise from Plaintiffs' completed loan modification application. *See Oakley v. Dolan*, 980 F.3d 279, 284 (2d Cir. 2020) ("[A]t the motion to dismiss stage . . . a court must assume the truth of the plaintiff's allegations and avoid resolving factual disputes."). Defendants ask this Court to consider documents outside of the pleadings, which they contend establish that "the trial modification did not result from Plaintiffs' loss mitigation application," for the truth of their contents. MTD at 7–9 (citing ECF No. 20-12). Doing so would be improper. *See Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007); *ADPA Holdings LTD v. Cohen*, No. 24-CV-6029 (CS), 2025 WL 3458749, at *7 (S.D.N.Y. Dec. 2, 2025) ("[W]hile the Court may consider these documents as integral to the [complaint], they cannot be relied on for their truth or to contradict the allegations in the [complaint]."); *Donoghue v. Gad*, No. 21-CV-7182 (KPF), 2022 WL 3156181, at *5 n.7 (S.D.N.Y. Aug. 8, 2022) (collecting cases). Thus, the regulation relied upon by Defendants, 12 C.F.R. pt. 1024, Supp. I, cmt. 41(C)(2)(i)(1), is inapposite here, because the Court declines to determine at this stage that Defendants did not "consider[] any information provided by [Plaintiffs] in connection with a loss mitigation application" in extending their final loan modification. *See* MTD at 8; Reply at 5 (quoting 12 C.F.R. pt. 1024, Supp. I. cmt. 41(c)(2)(i)(1)).

In sum, Plaintiffs have sufficiently alleged that their loan modification application remained pending prior to their acceptance of the final loan modification agreement and thus, prior to the initiation of the foreclosure action. *See* Am. Compl. ¶¶ 15–17. And they have therefore stated a RESPA claim.

Moreover, contrary to Defendants' argument, Plaintiffs have sufficiently alleged damages resulting from the RESPA violation. *See* MTD at 9–14. "To recover actual damages, Plaintiff[s] must allege injury and resulting damages that are proximately caused by the loan servicer's failure to adhere to its obligations under § 2605." *Manzolillo v. Nationstar Mortg., LLC*, 765 F. Supp. 3d 157, 166 (E.D.N.Y. 2025) (cleaned up). "In other words, Plaintiff[s] must specifically allege and show how Defendant[s'] purported RESPA violations—rather than Plaintiff[s'] underlying failure to pay [their] mortgage and the subsequent foreclosure sale—gave rise to [their] damages." *Id.*

Here, Plaintiffs allege that Defendants' dual tracking—their initiation of a foreclosure action while Plaintiffs' loan modification application remained pending—caused Plaintiffs to accept less advantageous modification terms, which resulted in increased payment amounts and emotional damages. *See* Am. Compl. ¶¶ 13–20, 31–36. At this stage, Plaintiffs have sufficiently tied these damages to the alleged RESPA violation. Plaintiffs allege that but for the initiation of the foreclosure suit, Plaintiffs would not have accepted the unfavorable loan modification terms, which directly led to increased payments and Plaintiff Cathy Schlecter's anxiety diagnosis. *Id.* ¶¶ 30–32, 35.

Unlike other cases cited by Defendants, Plaintiffs' RESPA damages are distinct from any damages arising solely from their inability to pay their mortgage. *See* MTD at 10 (citing *Roth v. CitiMortgage Inc.*, No. 12-CV-2446 (SJF) (WDW), 2013 WL 5205775, at *8 (E.D.N.Y. Sept. 11,

2013), *aff'd*, 756 F.3d 178 (2d Cir. 2014) (determining that a plaintiff failed to allege that a RESPA violation caused her emotional damages, which consisted of "strain related to the potential loss of their family home" and "dealing with her husband's emotional strain")). Rather, Plaintiffs allege that their damages arise directly from the loan modification—which they would not have accepted but for the RESPA violation—and from defending against Defendants' actions, which include the allegedly illegal foreclosure lawsuit. *See* Am. Compl. ¶¶ 30–32, 35.

Furthermore, Plaintiffs have sufficiently alleged recoverable damages arising from the HOA's litigation fees in defending the foreclosure suit. *See* Am. Compl. ¶ 34. Defendants argue that these attorney's fees are not compensable damages under RESPA, because they arise from "Plaintiffs' separate contractual obligations they owe to their HOA" and "not [from] the foreclosure filing." MTD at 12; Reply at 7. However, Defendants cite no caselaw in support of their argument. *See id.* And contrary to Defendants' argument, the money Plaintiffs had to pay to the HOA clearly flows from the alleged RESPA violation—the HOA's defense of an allegedly illegal lawsuit, now charged to Plaintiffs. Therefore, Plaintiffs have sufficiently stated that payment of their HOA's costs arising from the allegedly illegal foreclosure suit could constitute actual damages under RESPA.

The Court does agree, however, that Plaintiffs have failed to allege statutory damages. In order to state a claim for statutory damages under RESPA, which are available "in an amount not to exceed $2,000," a plaintiff must allege that the defendant engaged in "a pattern or practice of noncompliance with" RESPA. *Id.* § 2605(f)(1)(B). Here, Plaintiffs cursorily state that Defendants have engaged in a "pattern of noncompliance" with RESPA, Am. Compl. ¶ 36, but Plaintiffs fail to allege any facts supporting that such a pattern exists. "Such conclusory allegations are insufficient to survive a motion to dismiss." *Ramirez v. Wells Fargo Bank, N.A.*, No. 19-CV-5074

(CBA), 2021 WL 9564023, at *10 (E.D.N.Y. Mar. 24, 2021) (determining that a plaintiff failed to "allege[] a pattern or practice of noncompliance with RESPA"). Therefore, Plaintiffs have failed to allege statutory damages.

In conclusion, Plaintiffs have sufficiently alleged a RESPA violation and certain resulting damages at this stage. Defendants' motion to dismiss Plaintiffs' RESPA claim is denied.

## II. Defendants' Motion to Dismiss Plaintiffs' TILA Claim Is Granted

Defendants move to dismiss Plaintiffs' TILA claim on the grounds that it is time-barred and that Plaintiffs failed to allege that Defendants violated any duty under TILA. ECF No. 20-1 ("MTD") at 14–17. Plaintiffs failed to oppose Defendants' motion to dismiss their TILA claim, and in fact made no mention at all of the TILA claim in this opposition papers. *See* Opp. Especially "in the case of a counseled party, a court may . . . infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned." *Jackson v. Fed. Express*, 766 F.3d 189, 198 (2d Cir. 2014). *See also Felix v. City of New York*, 344 F. Supp. 3d 644, 654 (S.D.N.Y. 2018) ("Courts 'may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed.'" (quoting *Arma v. Buyseasons, Inc.*, 591 F.Supp.2d 637, 643 (S.D.N.Y. 2008)).

Even without the benefit of Plaintiffs' response, it is clear that Plaintiffs' TILA claim is time-barred. "[A] suit for damages under TILA, in connection with a mortgage loan, may not be brought more than one year after entering into that loan." *Latouche v. Wells Fargo Home Mortg. Inc.*, 752 F. App'x 11, 13 (2d Cir. 2018) (summary order) (collecting cases). Here, Plaintiffs

entered into the loan modification agreement in October 2024, ECF No. 20-14,[3] but did not initiate this action until January 12, 2026. *See* ECF No. 1. And this is a suit for damages. *See* Am. Compl. at 7. Therefore, even if Plaintiffs did not abandon their TILA claim, it would fail as time-barred. Accordingly, the Court grants dismissal of Plaintiffs' TILA claim with prejudice.

**CONCLUSION**

Defendants' Motion to Dismiss is DENIED IN PART and GRANTED IN PART. The Court denies dismissal of Plaintiffs' RESPA claim but dismisses with prejudice Plaintiffs' TILA claim.

The Clerk of Court is directed to terminate ECF Nos. 14 and 20.

Dated: November 24, 2026
White Plains, New York

SO ORDERED.

Jessica Clarke

JESSICA G. L. CLARKE
United States District Judge

[3] In deciding the present motion to dismiss, the Court may properly consider any document in which the Amended Complaint "relies heavily upon its terms and effect, which renders the document integral to the" Amended Complaint. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (internal quotation marks and citation omitted). Here, the loan modification agreement, ECF No. 20-14, is clearly integral to this case, which hinges on its execution and terms. *See* Am. Compl.